IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-746

Filed: 2 August 2016

Caldwell County, No. 14 CVS 1250

RAYMOND JAMES CAPITAL PARTNERS, L.P., Plaintiff

v.

HAZEL HAYES, Defendant

Appeal by plaintiff from order entered 23 February 2015 by Judge Robert C. Ervin in Caldwell County Superior Court. Heard in the Court of Appeals 2 December 2015.

*Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Forrest A. Ferrell and Amber Reinhardt Mueggenburg, for plaintiff-appellant.*

*Tin, Fulton, Walker & Owen, PLLC, by Sam McGee, for defendant-appellee.*

CALABRIA, Judge.

Raymond James Capital Partners, L.P. ("plaintiff") appeals from an order granting Hazel Hayes' ("defendant") motion to dismiss all claims asserted against her. We affirm.

## I. *Background*

Plaintiff was a majority shareholder of Albion Medical Holdings, Inc. ("Albion"), a closely held corporation. Defendant was a minority shareholder of Albion. Greer Laboratories, Inc. ("Greer")—a North Carolina corporation and wholly-owned subsidiary of Albion—employed defendant for approximately forty-five years.

In 2005, defendant became Assistant Controller of Greer. Her job responsibilities included "performing monthly bank reconciliations, maintaining the general ledger, reviewing accounting entries and maintaining physical possession over Greer's manual checks."

In 2013, Albion, and by extension, Greer, were sold pursuant to a Stock Purchase Agreement. A business valuation method known as EBIDTA (Earnings Before Interest, Taxes, Depreciation, and Amortization) was used to calculate the purchase price. Albion was sold for 13.5 times the trailing twelve-month EBITDA. In addition, any excess cash of Albion was to be allocated to shareholders in the form of dividends or a pre-closing distribution. After the sale occurred, defendant continued to work as Greer's Assistant Controller until she retired in September 2014.

Soon after defendant's retirement, Greer uncovered evidence that indicated she had issued manual checks to herself and falsely recorded the funds as payments to banks and vendors in the general corporate ledger. After being confronted with this evidence, defendant allegedly admitted to embezzling funds from Greer beginning in May 2013; however, the results of an internal investigation suggested that the fraudulent check scheme dated back to 2004.

Consequently, on 7 November 2014, plaintiff filed a verified complaint[1] against defendant in Caldwell County Superior Court. Plaintiff alleged claims of embezzlement, conversion, fraud, breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, and a violation of North Carolina's Racketeer Influenced and Corrupt Organizations Act ("RICO"). According to plaintiff's allegations, defendant embezzled approximately $839,878.00 from Greer. The verified complaint also contained a motion for a temporary restraining order and a preliminary injunction. The trial court subsequently entered a preliminary injunction against defendant prohibiting her from, *inter alia*, selling, conveying, or liquidating her assets in order to protect plaintiff's "ability to collect upon any judgment it obtain[ed] in th[e] case." Defendant responded by filing an answer and motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim based, in part, on plaintiff's lack of standing to bring individual claims against defendant. After a hearing on the Rule 12(b)(6) motion, the trial court entered an order on 23 February 2015 granting defendant's motion to dismiss as to all claims. Plaintiff appeals.

## II. *Standard of Review*

---

[1] Greer also filed an action against defendant in Caldwell County but a settlement was eventually reached in that case. For reasons not contained in the record, none of Albion's shareholders were parties to that action.

Plaintiff contends the trial court erred in granting defendant's motion to dismiss under Rule 12(b)(6) for failure to state any claim upon which relief could be granted. We disagree.

> The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss, the complaint's material factual allegations are taken as true. Legal conclusions, however, are not entitled to a presumption of validity. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wells Fargo Bank, N.A. v. Corneal*, __ N.C. App. __, __, 767 S.E.2d 374, 377 (2014) (citation omitted). Ultimately, this Court "conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation, quotation marks, and brackets omitted).

## III. *Shareholder Actions*

Plaintiff, as a shareholder of Albion, seeks to bring individual causes of action against defendant, a former officer of Greer,[2] to recover for losses related to plaintiff's investment and the reduction of certain dividends as well as pre-distribution payments to which it was purportedly entitled.

Under North Carolina law, corporate officers with discretionary authority must discharge their duties in good faith, with due care, and in a manner they believe to be in the corporation's best interests. N.C. Gen. Stat. § 55-8-42(a) (2015); *see also id.* § 55-8-30(a) (2015) (same with respect to corporate directors). When these fiduciary duties are breached, the issue of whether the resulting injuries should be litigated in an individual or a derivative action arises. "A derivative proceeding is a civil action brought . . . in the right of a corporation, . . . while an individual action is . . . [brought] to enforce a right which belongs to [a plaintiff] personally." *Morris v. Thomas*, 161 N.C. App. 680, 684, 589 S.E.2d 419, 422 (2003) (citation and internal quotation marks omitted). "Shareholders . . . of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220-21 (1997) (citations and quotation marks omitted). A similar, "well-established general rule is that shareholders cannot pursue individual causes of

---

[2] We note that defendant does not concede that she was actually an officer of Greer. The trial court also questioned plaintiff's characterization of defendant as a corporate officer. In any event, since the essence of the verified complaint is that defendant was an officer and that she owed specific fiduciary duties to plaintiff, we assume for purposes of this appeal that defendant was an officer.

action against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Id.* at 658, 488 S.E.2d at 219 (citations omitted). Since the loss of an investment " 'is [typically] identical to the injury suffered by' the corporate entity as a whole[,]" claims arising from injuries to the corporation are properly asserted in derivative suits. *Green v. Freeman*, 367 N.C. 136, 144, 749 S.E.2d 262, 269 (2013) (citation omitted); Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 17.01 *et seq.* (7th ed. 2015) (explaining that corporate shareholders may normally enforce a claim that belongs to the corporation only through a derivative suit brought on behalf of the corporation).

A suit against corporate officers or directors for breach of fiduciary duty is "[o]ne of the clearest examples of a derivative action. . . ." *Id.* at § 17.02[1]. As explained by the United States Supreme Court, shareholder derivative suits exist to remedy "those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has." *Meyer v. Fleming*, 327 U.S. 161, 167, 90 L. Ed. 595, 600 (1946).

The general prohibition against individual shareholder suits is understandable, for "the duties, the breaches of which constitute the ground of action, are duties to the corporation, considered as a legal entity, and not duties to any particular [share]holder." *Coble v. Beall*, 130 N.C. 533, 536, 41 S.E. 793, 794 (1902). Thus, "any damages [recovered from derivative suits] flow back to the corporation, not to the individual shareholders bringing the action." *Green*, 367 N.C.

at 142, 749 S.E.2d at 268. Furthermore, the procedural requirements for derivative suits protect shareholders and the corporation itself by avoiding a "multiplicity of lawsuits," by limiting "who should properly speak for the corporation[,]" and by preventing "self-selected advocate[s] pursuing individual gain rather than the interests of the corporation or the shareholders as a group, [from] bringing costly and potentially meritless strike suits." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 396, 537 S.E.2d 248, 253 (2000) (citation and internal quotation marks omitted). Given these principles, a shareholder generally has no standing to bring individual actions against a corporation. Standing, which "is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction[,]" generally refers "to a party's right to have . . . the merits of [its] dispute" decided by a judicial tribunal. *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51-52 (2002) (citations omitted).

Nevertheless, a "shareholder may maintain an individual action against a third party for an injury that directly affects the shareholder, even if the corporation also has a cause of action arising from the same wrong," under two circumstances: (1) where "the wrongdoer owed [the shareholder] a special duty[,]" and (2) where the shareholder suffered a personal injury—one that is "separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Barger*, 346 N.C. at 659, 488 S.E.2d at 219 (citation omitted). Accordingly, an evaluation of [plaintiff's] standing in this matter requires an analysis of: (1) [plaintiff's] alleged injury, and (2)

the relationship between [plaintiff] and defendant[] with respect to each claim." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 335, 525 S.E.2d 441, 444 (2000).

## A. Special Duty

All of plaintiff's claims for relief are based on the same core of operative facts, to wit: that defendant recorded false transactions in Greer's ledger and misappropriated corporate funds for her own personal gain. However, plaintiff insists that Albion existed merely as a holding company for its subsidiaries, which included Greer.[3] Based on this characterization, plaintiff argues that defendant owed it a "special duty" individually. Specifically, plaintiff contends that "[d]ue to [d]efendant's position, authority[,] and familiarity with the financial affairs of Greer, [she] owed a heightened duty to shareholders [of Albion] to act in good faith and with due care with regards to said financial affairs." We disagree.

In *Barger*, our Supreme Court explained and illustrated the special duty exception as follows:

> The special duty may arise from contract or otherwise. To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the

---

[3] We note that plaintiff asks us to ignore the corporate form relevant to this case. As the trial court pointed out, the duties that defendant allegedly owed would run to the shareholders of Greer, which was Albion itself. According to the trial court, the duties would not run to defendants as shareholders of Albion. Plaintiff has not cited any case law supporting the general proposition that North Carolina courts disregard the separate existence of a parent corporation and its wholly-owned subsidiary. Apart from cases presenting circumstances that would justify veil piercing or a conclusion that a wholly-owned subsidiary was its parent's agent, the trial court's analysis appears to be sound. In any event, for purposes of this appeal, we assume that any duties defendant may have owed to Greer flowed directly to the shareholders of Albion.

> shareholder as an individual. The existence of a special duty thus would be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation. A special duty therefore has been found when the wrongful actions of a party induced an individual to become a shareholder; when a party violated its fiduciary duty to the shareholder; when the party performed individualized services directly for the shareholder; and when a party undertook to advise shareholders independently of the corporation.

*Id.* at 659, 488 S.E.2d at 220 (citations omitted). The *Barger* Court then explained: "This list is illustrative; it is not an exclusive list of all factual situations in which a special duty may be found." *Id.* Despite this qualification, the special duty exception clearly requires an articulation of some duty owed to a plaintiff that is distinct from the general fiduciary duties directors and officers owe to the corporation.

In the instant case, the special, or heightened, duties identified by plaintiff do not support its purported right to seek individual recovery in a direct action against defendant. The verified complaint alleges that (1) shareholders in a closely held corporation owe a fiduciary duty to one another, and (2) officers owe a fiduciary duty to shareholders. Unfortunately for plaintiff, the former is a misstatement of North Carolina corporation law and the latter fails to meet the threshold set out in *Barger*.

"As a general rule, shareholders do not owe a fiduciary duty to each other or to the corporation." *Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993) (citation omitted). However, "[a]n exception to this rule is that a controlling shareholder owes a fiduciary duty to minority shareholders." *Kaplan v. O.K. Techs.*,

L.L.C., 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). To that end, our courts have extended special protections to minority shareholders in closely held corporations. *See, e.g.*, *Norman*, 140 N.C. App. at 407, 537 S.E.2d at 260 (noting that North Carolina's "cases have consistently held that majority shareholders in a close corporation owe a 'special duty' and obligation of good faith to minority shareholders"). However, plaintiff was not a minority shareholder of Greer; it was a *majority* shareholder in Albion.

Furthermore, while corporate officers generally "owe a fiduciary duty to the corporation and [its] shareholders[,]" *T-WOL Acquisition Co. v. ECDG South, LLC*, 220 N.C. App. 189, 208, 725 S.E.2d 605, 617 (2012) (emphasis added), the breach of that duty rarely creates an individual cause of action. *See Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 26, 560 S.E.2d 817, 822 (2002) ("Under North Carolina law, directors of a corporation generally owe a fiduciary duty to the corporation, and where it is alleged that directors have breached this duty, the action is properly maintained by the corporation rather than any individual creditor or stockholder.") (citation omitted). As the commentary to section 55-8-30 explains, the prior version of the law "provided that officers and directors stand in a fiduciary relation 'to the corporation and its shareholders,'" but the amended version does not reference a fiduciary duty to shareholders. Our Supreme Court has recognized that this amendment was intended "'to avoid an interpretation [of section 55-8-30] . . . that would give shareholders a direct right of action on claims that should be asserted derivatively[.]'"

*Green*, 367 N.C. at 141, 749 S.E.2d at 268 (quoting N.C. Gen. Stat. § 55-8-30 (2011)). When the fiduciary duties of due care, loyalty, and good faith are breached, a shareholder may sue the offending director or officer in a derivative action. N.C. Gen. Stat. § 55-7-41 (2015).

Here, all of plaintiff's causes of action are based upon defendant's violation of her core fiduciary duties to the corporation (Greer). As a result, plaintiff has failed to allege any duty that was individualized or otherwise "special." Absent from the verified complaint is any allegation that plaintiff was a party to a contract with defendant that created distinct duties personal to plaintiff, or that defendant induced plaintiff to become a shareholder. There is also no allegation that defendant advised or dealt with plaintiff outside of the officer-shareholder relationship. In fact, there is no indication that plaintiff and defendant had particular dealings with each other in any context. *Green*, 367 N.C. at 143-44, 749 S.E.2d at 269 (holding that the special duty exception did not apply where "the most contact plaintiffs had with [the defendant] was seeing her a handful of times and saying nothing more than " 'hello' "). Although the *Barger* scenarios are not exclusive, this case does not present a situation where the recognition of a special duty would be proper or justified.

In sum, plaintiff has not "set forth any allegations which, even taken as true, support a special duty between it and defendant[]." *Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444.

B. **Separate and Distinct Injury**

Plaintiff next argues that its injuries were "separate and distinct" from those suffered by Greer and that, therefore, its individual claims fall under the second *Barger* exception. Once again, we disagree.

To proceed under the second, special injury exception to the general rule against individual actions, a plaintiff must allege an injury "peculiar and personal" to itself as a shareholder. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. Specifically, a plaintiff must show that its particular injury was "separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Id.* at 659, 488 S.E.2d at 219.

As to plaintiff's claim for embezzlement, the verified complaint contains the following statements of injury and damages:

> 28. [Defendant's] actions as set forth herein resulted in the diminution in value of Albion's stock and the decrease in the purchase price of Albion.
>
> 29.  [Defendant's] actions as set forth herein further resulted in the decrease in the value of excess cash available for distribution either as dividends or a pre-closing distribution to [plaintiff] *and the other shareholders* of Albion.

(Emphasis added). The verified complaint is replete with virtually identical allegations as to each of plaintiff's additional causes of action. Plaintiff's arguments on appeal are also consistently couched in terms of injuries sustained by it and "the shareholders." Thus, by plaintiff's own account, it has not suffered a unique, personal injury. Given the nature of its allegations at the trial level and its arguments on

appeal, plaintiff has failed to show that its injury is separate and distinct from that suffered by other shareholders.

Furthermore, the heart of plaintiff's verified complaint is that it and Albion's other shareholders received inadequate—or more precisely, reduced—payments based upon the diminution of the value of their shares. Yet the alleged reduction in distributions or dividends is directly tied to a decrease in Albion's shares: plaintiff ultimately lost the full benefit of its investment only because Albion's shares in Greer lost value. Consequently, any reduced payments received by plaintiff were likewise received by all other shareholders.

Nevertheless, plaintiff contends that its injury is separate and distinct from that suffered by Greer because Greer was never entitled to "(1) the multiplied amount constituting the purchase price pursuant to the Stock Purchase Agreement, (2) the pre-closing distribution amount, or (3) yearly dividends." This argument ignores that the allegedly embezzled funds were taken directly from Greer's corporate coffers. As a result, plaintiff is simply positing a distinction without a difference: plaintiff's claims for reduced payments are based upon its ownership of shares, and these claims derive from the same underlying injury suffered by the corporation itself. Since plaintiff's losses are inextricably linked to the value of its investment, the appropriate reasoning is as follows: (1) defendant's embezzlement of Greer's funds reduced the value of all shares held in Albion and (2) caused Greer and Albion to be purchased for a reduced price, which (3) resulted in plaintiff's and the other shareholders'

diminished compensation after the sale. Consequently, plaintiff's injury for reduced payments is the functional equivalent of a claim for diminution of the value of shares held by all of Albion's shareholders. *See, e.g.*, *Energy Investors*, 351 N.C. at 336, 525 S.E.2d at 444 (finding no individualized injury where the plaintiff's "injury [was] the loss of its investment, which is identical to the injury suffered by other limited partners and by the partnership as a whole"); *Barger*, 346 N.C. at 659, 488 S.E.2d at 220 ("The only injury plaintiffs as shareholders allege is the diminution or destruction of the value of their shares as the result of defendants' negligent or fraudulent misrepresentations of TFH's financial status. This is precisely the injury suffered by the corporation itself."). Thus, plaintiff has failed to allege any injury that is separate and distinct from the harm suffered by Greer or all of Albion's shareholders collectively.

## IV. *Conclusion*

Plaintiff's individual claims, derivative in nature, do not fall under either one of the *Barger* exceptions to the general rule prohibiting individual shareholder suits. Therefore, plaintiff lacks standing to maintain a direct action seeking individual recovery against defendant. Accordingly, the trial court properly granted defendant's motion to dismiss all claims against her.

AFFIRMED.

Judges ELMORE and ZACHARY concur.